Raymond H. **WECHSLER, Administrative Trustee, Plaintiff,**

v.

**SQUADRON, ELLENOFF, PLESENT & SHEINFELD, L.L.P., Defendant.**

**No. 96 Civ. 4115 (WK) (AJP).**

United States District Court, S.D. New York.

July 28, 1997.

See also 1995 WL 571888.

Richard Mancino, Wilkie Farr & Gallagher, New York City, for Plaintiff.

Philip S. Kaufman, Kramer, Levin, Naftalis & Frankel, New York City, for Defendant.

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

Before us is one of several actions arising out of the alleged Ponzi scheme involving Towers Financial Corporation ("Towers"). This particular action is brought by Raymond H. Wechsler ("trustee" and/or "plaintiff"), administrative trustee of the bankrupt Towers, against Towers' former law firm Squadron, Ellenoff, Plesent, Sheinfeld, LLP ("Squadron Ellenoff" and or "defendant") alleging malpractice, breach of fiduciary duty and breach of contract.   Defendant has filed a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(1) for lack of subject matter jurisdiction, or in the alternative pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim.

On March 26, 1997, Magistrate Judge Peck issued a Report and Recommendation ("the Report") recommending that we deny defendant's motion to dismiss. Before us are defendant's Objections to that Report. For the reasons that follow, defendant's motion pursuant to Rule 12(b)(1) is granted, without prejudice to the trustee's filing an amended complaint in accordance with the terms set forth in this Memorandum.

## BACKGROUND

As noted by Judge Peck in his Report, the court is "intimately familiar" with the facts of this case, which are described in detail in the related case of *In re Towers Financial Corp. Noteholders Litig.* (S.D.N.Y. Sept. 20, 1995) 93 Civ. 0810, 1995 WL 571888, *aff'd* (S.D.N.Y. 1996) 936 F.Supp. 126. Accordingly, we will not restate these facts, and adopt Judge Pecks' account as outlined in the Report. In summary, plaintiff, as the bankruptcy trustee of Towers, has brought claims against defendant, Towers' attorney, alleging that it breached its fiduciary duty to the company and committed legal malpractice in failing to stop the fraud "personally overseen and directed" by Towers' CEO Steven Hoffenberg "and his cohorts," (Complaint ¶ 6), and that defendant benefitted from this fraud because it continued to earn attorney's fees amounting to "many hundreds of thousands of dollars." Complaint ¶ 42.

## DISCUSSION

In support of its motion to dismiss, Squadron Ellenoff argues that the Complaint should be dismissed, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction because the trustee lacks standing to assert the instant claims. In his Report, however, Judge Peck finds that based on the allegations' in the Complaint the trustee does have standing to assert the instant claims on behalf of Towers. See Report at 17–22. Specifically, Judge Peck concludes that the trustee is not barred from bringing suit by the Second Circuit's decision in *Shearson, Leh-man, Hutton, Inc. v. Wagoner* (2d Cir.1991) 944 F.2d 114, 120 (hereinafter "the *Wagoner* rule"), where the court held that "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation."

Contrary to defendant's assertion, we conclude that Judge Peck did not indicate that the *Wagoner* rule is only applicable to a situation where the individual committing the fraud is a sole shareholder. He recognized that it would be applicable in a situation where the owners and all relevant members of the management so participated.

Judge Pecks' conclusion regarding the applicability of the "*Wagoner* rule" finds support in other cases. For example, in *In re Wedtech Securities Litigation* (S.D.N.Y.1992) 138 B.R. 5, 8, defendant-accountants made a motion for summary judgment on the plaintiff-trustee's claim for malpractice on the theory that plaintiff lacked standing under the *Wagoner* rule. Judge Sand denied defendant's motion for summary judgment because there was insufficient evidence to resolve the key "question of whether the guilt of the corporate officers can be imputed to the corporation." As alleged in the Complaint, "[t]he officers guilty of misconduct were not Wedtech's sole shareholders." *Id.* Thus, Judge Sand found "that *Wagoner* [was] not controlling on the facts here," and he did not dismiss the action for lack of standing. *Id.*

By contrast, Judge Haight granted defendant's motion to dismiss a trustee's claim for malpractice against a corporations' outside lawyers and accountants because, as in *Wagoner,* "the corporations' sole shareholder and *decisionmaker* had consented to and participated in the injurious conduct." *In re Mediators* (S.D.N.Y.1995) 190 B.R. 515, 528 (emphasis ours). In reaching this conclusion, Judge Haight explicitly distinguished *Wedtech* based on its finding that "the officers accused of wrongdoing were not the corporation's sole shareholders, and were allegedly not acting as agents of the corporation." *In re Mediators,* 190 B.R. at 528. The Second Circuit later affirmed, without disturbing this conclusion. (2d Cir.1997) 105 F.3d 822.

■ Accordingly, we agree with Judge Peck's finding that the *Wagoner* rule only applies where *all* relevant shareholders and/or decisionmakers are involved in the fraud, and therefore, adopt the Report with respect to this section.[1] Absent such a finding, the fraud cannot by imputed to the corporation, thereby granting the trustee of that corporation standing to litigate a malpractice claim against third parties.

■ However, we disagree with Judge Peck's conclusion that the Complaint actually alleges the existence of an innocent member of Towers' management who would have been able to prevent the fraud had he known about it. As discussed above, absent such an allegation in the Complaint the trustee would not have standing to assert the instant claims under the *Wagoner* rule. Accordingly, defendant's motion to dismiss is granted.

We refer the matter back to Judge Peck to oversee any discovery he deems necessary and appropriate to determine whether plaintiff could amend the Complaint to allege the existence of some person(s) involved in Towers' management who was ignorant of the ongoing fraud and could and would if advised of facts known to defendant have taken steps to bring the fraudulent conduct to an end. To be valid a complaint would have to identify such person(s), and explain how he could and would have brought the fraud to an end. If Judge Peck concludes that plaintiff could make such allegations in light of the pleading requirements of Rule 11, plaintiff may file an amended complaint.

We do not at this time consider whether or not the Complaint actually alleges a claim for legal malpractice. Resolution of such question will only be necessary if plaintiff can establish standing.

### CONCLUSION

Defendant's motion to dismiss is granted. The matter is referred back to Judge Peck to oversee any discovery necessary to deter-

mine whether plaintiff can file an amended complaint as described above. All questions of timing and procedure are left to Judge Peck's discretion.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

To the Honorable Whitman Knapp, United States District Judge:

The Administrative Trustee of the bankrupt Towers Financial Corporation brought suit against Towers' former law firm, Squadron, Ellenoff, Plesent & Sheinfeld, LLP ("Squadron Ellenoff"), alleging malpractice, breach of fiduciary duty and breach of contract. Presently before the Court is Squadron Ellenoff's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, I recommend that the Court deny Squadron Ellenoff's motion. The Court notes that Squadron Ellenoff's motion to dismiss is principally aimed at the Trustee's assertion of certain damage theories that sound as if he may be seeking damages that more properly belong to Towers' creditors (such as the Towers' Noteholders). The legal malpractice action, however, belonged to Towers and hence can be asserted by the Trustee. The Trustee alleges at least one proper measure of malpractice damages—the legal fees Towers paid to Squadron Ellenoff—and the Court therefore need not decide the validity of the Trustee's other damage theories. The Trustee has standing to assert the malpractice claims. The in pari delicto doctrine does not bar these claims. The Court suspects that the Trustee may have a hard time proving his allegation that there was an innocent Towers director to whom Squadron Ellenoff could have fulfilled its fiduciary duty to Towers by "blowing the whistle" on the fraud of Towers' CEO Steven Hoffenberg—but on a motion to dismiss, the Court cannot say it is impossible for the Trustee to prove its com-

---

**1.** We further agree with Judge Pecks' conclusion that the doctrine of *in pari delicto* (with its "adverse exception rule"), although a matter of state law, is very similar to the *Wagoner* rule in that its application depends on a finding that *all* relevant shareholders *and decisionmakers* of the corpora-

tion were engaged in the fraud. *See* Report at 44–46. Accordingly, if plaintiff can sufficiently allege an innocent member of Towers' management so as to render the *Wagoner* rule inapplicable, then the adverse exception rule to the doctrine of *in pari delicto* will apply.

plaint. I recommend that the Court deny Squadron Ellenoff's motion to dismiss.

## FACTS

Judge Knapp and I are intimately familiar with the facts of this case through the related case of *In re Towers Financial Corp. Noteholders Litig.*, 93 Civ. 0810, 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), *aff'd*, 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, J.), familiarity with which is assumed. (Hereafter, "the Noteholders litigation"; defined terms from that Report and Recommendation are used herein.)

The Administrative Trustee's present action against Squadron Ellenoff originally was filed in the Bankruptcy Court (case number 93–B–41558). The Court granted Squadron Ellenoff's motion to withdraw the reference to the Bankruptcy Court. *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 201 B.R. 635, 637–39 (S.D.N.Y.1996) (Knapp, J., adopting Report & Recommendation of Peck, M.J.).[1]

### The Noteholders Litigation Against Squadron Ellenoff

In brief, investors in Towers Notes sued, inter alia, the law firm of Squadron Ellenoff in a class action alleging that Squadron Ellenoff had participated in a far-reaching "Ponzi scheme" carried out by Towers insiders, designed to deceive the plaintiff class into purchasing Towers Notes. *In re Towers*, 1995 WL 571888 at *1. The investors alleged that Squadron Ellenoff, which represented Towers and its officials at SEC hearings, had committed fraud on the investors by failing to disclose information regarding the Ponzi scheme to the SEC and investors. As this Court summarized in *In re Towers*:

> Defendant Squadron Ellenoff is a New York based law firm that served as counsel to Towers and defendants Hoffenberg and Brater and represented Towers before the SEC and other regulatory agencies. In

the course of representing Towers before the SEC in 1988, Squadron Ellenoff received access to a confidential memorandum prepared by the accounting firm of Spicer & Oppenheim that revealed Towers' fraudulent accounting practices, but "Squadron Ellenoff went on to continue through various means," including making or failing to correct false statements to the SEC, "to sustain Towers' criminal course of conduct throughout the ensuing four years." "By the false statements made to the SEC and others, Squadron Ellenoff intended to prevent or delay, and did delay, the SEC from stopping Towers ... from selling Notes."

1995 WL 571888 at *3 (citations to *In re Towers* complaint omitted). The Noteholder plaintiffs' claims against Squadron Ellenoff included Rule 10b–5 securities fraud, negligent misrepresentation, breach of fiduciary duty and common law fraud. *Id.* at *7.

In my Report and Recommendation dated September 20, 1995, I recommended that the Court dismiss all claims against Squadron Ellenoff because, inter alia, the firm had no duty to disclose such information to investors, and the Noteholder plaintiffs did not allege reliance on any false statement by Squadron Ellenoff. 1995 WL 571888 at *16–24. Judge Knapp affirmed on August 1, 1996, but allowed the Noteholder plaintiffs to amend to assert a "conspiracy" claim against Squadron Ellenoff. *In re Towers*, 936 F.Supp. at 126–30.[2]

### The Trustee's Present Malpractice Action Against Squadron Ellenoff

On April 1, 1996, Raymond H. Wechsler, Towers' Administrative Trustee, commenced this action against Squadron Ellenoff, alleging: (1) attorney malpractice (Cplt.¶¶ 32–38); (2) breach of Squadron Ellenoff's implied contract with Tower's to exercise due care in providing legal services (Cplt.¶¶ 39–44); and (3) breach of fiduciary duty for failing to act

---

**1.** In March 1995, the Trustee brought a preference action against Squadron Ellenoff in the Bankruptcy Court (95/8825A) to recover Towers' payment of some $662,000 to Squadron Ellenoff within 90 days before Towers' bankruptcy. (*See* Kaufman Aff. Ex. 4.) That action remains pending in the Bankruptcy Court.

**2.** Pursuant to a settlement agreement between the Noteholder plaintiffs and the Trustee, the Noteholders will receive approximately 75% of any recovery by the Trustee from Squadron Ellenoff. (*See* Kaufman Aff. Ex. 7 at pp. 11–12, 17–18, 32; Squadron Ellenoff Br. at 9–10.)

in the best interests of Towers as opposed to Towers' officers and directors (Cplt.¶¶ 45–51).

The Trustee's complaint asserts that "[f]rom at least 1988 until the commencement of Tower's chapter 11 cases, every business in which Tower was engaged was permeated with fraud personally overseen and directed by [Towers' CEO Steven] Hoffenberg and his cohorts." (Cplt.¶ 6.) The Trustee further alleges that Hoffenberg "made it appear as though Towers' collection business was profitable by creating a wholly fictitious 'accounting rule' which generated illusory income, asset value and net worth." (*Id.*) The "accounting rule," known as the "30/30 rule," permitted Towers "to claim that it recognized its fees as 30% of the amount expected to be collected, thus implying that the recoverable reserve purportedly based on historical experience was 70%." (Cplt.¶ 7.)

In or about 1988, Towers retained the "accounting firm of Spicer & Oppenheim to identify support for ... the 30/30 rule." (Cplt.¶ 9.) The Spicer & Oppenheim report, however, "questioned the validity of the 30/30 rule and raised serious questions about Hoffenberg and his accomplices." (Cplt.¶ 10.)

Squadron Ellenoff began its representation of Towers and Hoffenberg in or about 1988 and continued the representation until at least March 24, 1993. (Cplt.¶ 17.) The Trustee contends that, in the course of its representation of Towers, Squadron Ellenoff became aware of the Spicer & Oppenheim Report "and knew or should have known, its contents.." (Cplt.¶ 19.) Additionally, the Trustee alleges that Squadron Ellenoff falsely responded to SEC inquiries and subpoenas in the course of an SEC investigation. (Cplt.¶ 21.) Squadron Ellenoff "met and conferred frequently" with Hoffenberg and other Towers' officers and, despite "being on notice that information provided to them by Hoffenberg and [others] was either unreliable, ... or patently false and misleading," Squadron Ellenoff provided such false information to the SEC. (Cplt.¶ 22.)

The Trustee's complaint further asserts:

At no point in time did any member of Squadron Ellenoff bring Hoffenberg's or his associates' fraudulent or improper activity to the attention of those who may have been able to effectuate a cessation of this behavior before any greater liability of Towers as an entity was incurred. Nor did they refuse to employ the unreliable and false information in their submissions to the SEC.

Instead, Squadron Ellenoff aggressively sought to protect Hoffenberg and others from liability or scrutiny by the SEC. Throughout this period, Squadron Ellenoff was paid by Towers, even though its actions did not benefit Towers, but rather harmed it.

(Cplt.¶¶ 26–27.)

Finally, the Trustee asserts that "Squadron Ellenoff's desire to protect Hoffenberg and his associates from liability, at the expense of Towers, permitted Hoffenberg to continue perpetrating the Ponzi scheme and increased the liability of its client corporation to the investing public, the SEC and others." (Cplt.¶ 28.) The Trustee alleges that "Squadron Ellenoff's ability to delay the inevitable discovery of the Ponzi scheme, while simultaneously neglecting to advise Towers of the manifestations thereof, served to increase the number of defrauded investors and Towers' ultimate liability." (Cplt.¶ 29.)

The complaint alleges that Squadron Ellenoff benefitted from the huge legal fees it received from Towers: "Squadron Ellenoff received from Towers, through May 24, 1993, many hundreds of thousands of dollars as a result of its contract with Towers." (Cplt.¶ 42.)

### The Complaint's Causes of Actions

The Trustee's complaint asserts three related causes of action.

The Trustee's first cause of action is for legal malpractice. (Cplt.¶¶ 32–38.) The complaint alleges that as "Towers' attorneys, Squadron Ellenoff was obligated to exercise reasonable care, skill, prudence and judgment in the performance of its [legal] services to Towers." (Cplt.¶ 34.) The Trustee alleges that "while Squadron Ellenoff purported to act on behalf of Towers, its true loyalties were at all times to Hoffenberg," and thus Squadron Ellenoff breached its

"duty of loyalty" to Towers. (Cplt.¶¶ 35–36.) Squadron Ellenoff's breach included "failing to advise members of Towers of, and withholding from it, factual information and legal considerations reasonably necessary to alert Towers to the nature of its actions." (Cplt.¶ 36(c).)

The Trustee's second cause of action is for breach of contract. (Cplt.¶¶ 39–44.) The complaint alleges that Squadron Ellenoff breached its implied agreement to exercise due care in providing legal services to Towers. (Cplt.¶¶ 40–41.)

The Trustee's third cause of action alleges breach of fiduciary duty. (Cplt.¶¶ 45–51.) The complaint alleges that Squadron Ellenoff owed Towers the duties of a fiduciary because of the attorney-client relationship. (Cplt.¶ 46.) "When the client is a corporation, the loyalty of outside counsel, such as Squadron Ellenoff, must be directed solely towards the interests of the entity, and not to any of its individual officers or directors." (Cplt.¶ 48.) The complaint alleges that Squadron breached its fiduciary duties to Towers and that this was a "substantial factor in allowing the perpetration of the fraudulent Ponzi scheme to Towers' detriment." (Cplt.¶ 50.)

The complaint alleges in each cause of action that Towers suffered damages "in an amount to be determined at trial, but believed to be in excess of $15 million." (Cplt.¶¶ 31, 38, 44, 51.)[3] The complaint's Prayer for Relief also requests "[d]isgorgement of all legal fees paid by Towers to Squadron Ellenoff." (Cplt. at p. 15.)

## ANALYSIS

### I. A LEGAL MALPRACTICE CLAIM BELONGS TO THE CLIENT—HERE, TOWERS[4]

As the Second Circuit recently reiterated, "[i]n a bankruptcy proceeding, state law determines whether a right to sue belongs to the debtor or to the individual creditors.... The Bankruptcy Code places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy.... '[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.'" In re Mediators, Inc. (Mediators, Inc. v. Manney), 105 F.3d 822, 826 (2d Cir.1997). See also, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir.1995); Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir.1991).

The Trustee's three causes of action—legal malpractice, breach of contract and breach of fiduciary duty—essentially amount to a single claim for the provision of deficient legal services. See, e.g., In re Wedtech Corp. (Wedtech Corp. v. KMG Main Hurdman), 81 B.R. 240, 241 (S.D.N.Y.1987) ("the allegations of the debtor here, although brought under many different theories, all sound in malpractice. We find that ... claims of ... malpractice, ... [and] breach of fiduciary duty ... allege what is essentially 'a single form of wrongdoing under different names ...' For purposes of this motion to dismiss, we will therefore consider this to be in essence an action in malpractice."); accord, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir.1995); Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 119 (2d Cir.1991).

Under New York law, a legal malpractice claim requires a showing that the defendant lawyer was negligent, i.e., that the lawyer's conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by lawyers, and that the client suffered damages as a result. See, e.g., Prudential Ins. Co. of America v. Dewey Ballantine, Bushby, Palmer & Wood, 170 A.D.2d 108, 114, 573 N.Y.S.2d 981, 985 (1st Dep't 1991), aff'd, 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992); Mendoza v. Schlossman, 87 A.D.2d

---

**3.** Squadron Ellenoff notes that, not coincidentally, $15 million is the limit of its liability insurance policy. (See Squadron Ellenoff Br. at 13.)

**4.** The legal standard for a motion to dismiss under Rule 12(b), Fed.R.Civ.P., is discussed in In re Towers, 1995 WL 571888 at *11–12, and will not be repeated herein.

606, 606–07, 448 N.Y.S.2d 45, 46 (2d Dep't 1982).

Under New York law, it also is clear that a malpractice action belongs to the client— here, Towers. *See* 76 N.Y.Jur.2d § 36 ("New York generally adheres to the rule that an attorney is not liable to a person other than his client for the negligent performance of legal work."); *see also, e.g., C.K. Indus. Corp. v. C.M. Indus. Corp.*, 213 A.D.2d 846, 847, 623 N.Y.S.2d 410, 411 (3d Dep't 1995); *Caiati v. Kimel Funding Corp.*, 154 A.D.2d 639, 640, 546 N.Y.S.2d 877, 878 (2d Dep't 1989); *National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 146, 511 N.Y.S.2d 626, 628 (1st Dep't), *appeal denied*, 70 N.Y.2d 604, 519 N.Y.S.2d 1027, 513 N.E.2d 1307 (1987); *Viscardi v. Lerner*, 125 A.D.2d 662, 663–64, 510 N.Y.S.2d 183, 185 (2d Dep't 1986); *Tilyou v. Carroll*, No. CV–92–0750, 1992 WL 170916 at *6 n. 1 (E.D.N.Y. July 2, 1992); *Compusort, Inc. v. Goldberg*, 606 F.Supp. 456, 457 (S.D.N.Y. 1985). Thus, under bankruptcy law, since the malpractice claim belongs to Towers, it may be asserted by the Administrative Trustee.

Squadron Ellenoff asserts that under Second Circuit case law, the Trustee lacks standing and that the Trustee is barred from bringing this action by the in pari delicto doctrine. I discuss those arguments in subsequent sections of this Report and Recommendation. First, however, I briefly address Squadron Ellenoff's contention that the Trustee has not established even "the most basic elements" of a malpractice claim. (Squadron Ellenoff Br. at 21–26; Squadron Ellenoff Reply Br. at 17–22.)

## A. *The Trustee Has Pled and May Be Able to Prove a Breach of Duty by Squadron Ellenoff*

First, Squadron Ellenoff alleges that the Trustee cannot show any breach of duty by Squadron Ellenoff. (Squadron Ellenoff Br. at 22.) In *In re Towers*, this Court has already held that Squadron Ellenoff had no duty to disclose Hoffenberg's and Towers' fraud to third-party investors or the SEC. *In re Towers*, 1995 WL 571888 at *16–18. The Trustee carefully drafted the complaint in

this case to allege not that Squadron Ellenoff should have "blown the whistle" to outsiders, but rather that Squadron Ellenoff breached its duty by failing to "bring Hoffenberg's or his associates' fraudulent or improper activity to the attention of those who may have been able to effectuate a cessation of this behavior before any greater liability of Towers as an entity was incurred," such as Towers' outside directors. (Cplt. ¶ 26; Trustee Br. at 35.) Squadron Ellenoff claims that there was no innocent Towers director or officer to whom Squadron Ellenoff could have blown the whistle. Squadron Ellenoff points out that the complaint alleges that Hoffenberg "dominated and controlled" Towers. (Squadron Ellenoff Br. at 22, quoting Cplt. ¶ 30.) Squadron Ellenoff also refers to the Trustee's "omnibus" bankruptcy complaint in *Cohen v. Hoffenberg*, which alleges that all of Towers' directors breached their fiduciary duty. (Squadron Ellenoff Br. at 22, citing Kaufman Aff. Ex. 3: *Cohen v. Hoffenberg* Cplt. ¶ 41.)

The Trustee's allegations in the *Cohen* complaint that all of Towers' directors breached their fiduciary duty is just that, an allegation. It may be used as evidence (an admission) in this case, but it does not preclude the Trustee from alleging in this complaint that there is an innocent Towers director. "Under the [federal] rules a party ... may assume contradictory positions in separate and distinct actions as long as the pleader is acting within the limits of Rule 11 and is not barred by res judicata or collateral estoppel. The allegations asserted in an earlier lawsuit may be introduced by the adversary as evidence in the second action, but they do not conclusively bind the party as a matter of law." 5 Charles A. Wright & Arthur R. Miller; *Federal Practice & Procedure: Civil 2d* § 1283 (fn.omitted). Thus, the Trustee is not precluded from alleging that if Squadron Ellenoff "blew the whistle" to one or more of Towers' outsider directors, the director(s) in turn would have stopped Hoffenberg (directly or by going to the SEC). Based on the Court's supervision of all of the Towers-related cases, the Court recognizes that the Trustee may well have a difficult time proving the existence of such an

innocent Towers director. The Court, however, cannot say as a matter of law that there are no facts the Trustee could prove entitling him to relief.

### B. Since the Trustee Has Alleged a Valid Damage Claim for Legal Fees, the Court Need Not Determine Whether Other Damage Theories are Viable

Second, Squadron Ellenoff alleges that in the absence of injury there can be no liability, and that Towers (as opposed to the Noteholders) were not injured by the sale of additional Notes. Squadron Ellenoff explains:

> When a company issues a debt instrument in exchange for funds, it is a revenue-neutral event—a liability (the debt to the investor) is exchanged for an asset of equal value (the funds received).... If Towers was damaged, therefore, it was not the sale of Notes but the subsequent diversion of the proceeds of the sales by Hoffenberg and other insiders.

(Squadron Ellenoff Br. at 23.) The Trustee responds that Squadron Ellenoff also breached its duty to Towers by "turning a blind eye" to Hoffenberg's "looting." (Trustee Br. at 2, 14, 19–20 & n. 4.)

To evaluate this argument, it is necessary to understand that the Trustee appears to assert at least three different damage theories:

> [Squadron Ellenoff's] breaches caused separate and distinct damages from those alleged by the Noteholders. Specifically, as a result of Squadron Ellenoff's actions, Towers: (1) lost millions of dollars through the continual looting of Towers by Hoffenberg and his cohorts; (2) paid hundreds of thousands of dollars to Squadron Ellenoff for legal services which failed to provide value to Towers; and (3) incurred hundreds of millions of dollars in obligations to investors which Towers had no hope of repaying. (Cplt. at ¶¶ 14–17, 28–31.) These damages were the direct and proximate result of Squadron Ellenoff's breach of its duties to Towers.

(Trustee Br. at 14; see also id. at 19.) Squadron Ellenoff's motion to dismiss focuses on the Trustee's first and third damage theories, while ignoring the second.

However, so long as at least one legally sufficient damage theory exists, a motion to dismiss is directed towards a cause of action, not to different damage theories that may be asserted under the cause of action. This concept was aptly explained by Judge Haight:

> [D]efendants do not contend [that plaintiff] has failed to state a claim upon which relief can be granted. Rather, defendants argue that some aspects of the relief sought by the [plaintiff] are unavailable.
>
> Assuming arguendo that some or all of the defendants' contentions are meritorious, they do not justify dismissal of the Amended Complaint. Rule 56(c), F.R. Civ. P., provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Therefore, "a meritorious claim will not be rejected for want of a prayer for appropriate relief." Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292 (1978). As long as the plaintiff "might conceivably have some remedy" for the claim asserted, a Rule 12(b)(6) challenge must fail. Build of Buffalo, Inc. v. Sedita, 441 F.2d 284, 288 (2d Cir.1971).
>
> Here, I need not speculate whether plaintiff "might conceivably" have some remedy if it prevails on the merits. Defendants do not contend that none of the prayed-for relief is available if the [plaintiff] prevails on the merits; indeed, they concede this Court has the "power ... to grant extensive equitable relief." ... Accordingly, their arguments are not presented in a Rule 12(b)(6) motion. The appropriate scope of relief may be argued and determined if the [plaintiff] prevails on the merits.

United States v. Ianniello, 646 F.Supp. 1289, 1290 (S.D.N.Y.1986), aff'd on other grounds, 824 F.2d 203 (2d Cir.1987). See also, e.g., Build of Buffalo, Inc. v. Sedita, 441 F.2d 284, 288 (2d Cir.1971) (motion to dismiss will be denied where court cannot say to a certainty that plaintiff will not be able to make out a

case against defendants for at least part of the relief they request or some other appropriate relief); *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.,* 793 F.Supp. 1114, 1150 (E.D.N.Y.1992) ("complaint may only be dismissed if there is no relief which may be granted on the stated claims"); *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 683 F.Supp. 1411, 1442 (E.D.N.Y.1988), *aff'd on other grounds,* 879 F.2d 20 (2d Cir.1989).

If the Trustee can prove malpractice, in light of the allegation that Squadron Ellenoff's loyalty was to Hoffenberg instead of Towers, the Trustee has a viable damage claim at least for the legal fees Towers paid to Squadron Ellenoff. *See, e.g., A to Z Assoc. v. Cooper,* 161 Misc.2d 283, 292–93, 613 N.Y.S.2d 512, 519–20 (N.Y.Sup.Ct.1993) (former client recovered fees paid to attorney during period of disloyalty; "It is clear that an attorney's violation of his ethical duties to his clients results in denial of all compensation."); *Condren v. Grace,* 783 F.Supp. 178, 185–86 (S.D.N.Y.1992) (lawyer's failure to satisfy ethical obligations to client because of conflict of interest results in forfeiture of fee); *see also Barry v. Liddle, O'Connor, Finkelstein & Robinson,* 93 Civ. 8707, 1995 WL 702381 at *6 (S.D.N.Y. Nov. 28, 1995) (professional negligence may be raised as a defense to attorney suit for recovery of legal fees), *rev'd on other grounds,* 98 F.3d 36 (2d Cir.1996); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey (Redgrave v. Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 157 B.R. 1, 4–5 (S.D.N.Y.1993) (same), *aff'd mem.,* 22 F.3d 1091 (2d Cir.1994). Therefore, Squadron Ellenoff's arguments concerning the viability of other forms of relief "are not properly presented in a Rule 12(b)(6) motion." *United States v. Ianniello,* 646 F.Supp. at 1290. Just as Judge Haight in *Ianniello* "express[ed] no view . . . on the parties' arguments pertaining to the permissible scope of relief," this Court also declines to decide on this motion to dismiss whether the Trustee's other damage theories are via-

ble when it is clear that at least one valid damage theory exists. *United States v. Ianniello,* 646 F.Supp. at 1290 n. 2.[5]

## II. *THE TRUSTEE HAS STANDING TO BRING THESE MALPRACTICE CLAIMS*

Squadron Ellenoff argues that the Trustee's complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because the Trustee allegedly lacks standing to assert claims premised on the Noteholders' losses. (*See* Squadron Ellenoff Br. at 15–19; Squadron Ellenoff Reply Br. at 4–9.) Squadron Ellenoff relies on the Second Circuit's decisions in *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995), and *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir.1991). Squadron Ellenoff's reliance on *Hirsch* and *Wagoner* is misplaced.

In *Hirsch,* the Second Circuit expounded upon the requirement of standing and its application to a bankruptcy trustee:

> To have standing, "[a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." "A plaintiff must always have suffered 'a distinct and palpable injury to himself' . . . ." The injury must be "concrete in nature and particularized to [the plaintiff]," and not "[a]bstract," "conjectural," or "hypothetical."
>
> As the multitude of standing cases indicates, however, "[t]hese terms cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise." Accordingly, the Supreme Court instructs us to "compar[e] the allegations of the particular complaint to those made in prior standing cases," while keeping in mind the important role that the doctrine of separation of powers plays in limiting the scope of judicial authority. . . . The burden to establish standing remains with the party claiming that standing exists, *i.e.,* [the Trustee].

---

5. For this reason, the Court similarly need not reach Squadron Ellenoff's argument that because Towers was already "worthless" in 1988, any further "increase in worthlessness was no injury to the company." (*Compare* Squadron Ellenoff Br. at 25–26, and Squadron Ellenoff Reply Br. at 22–23, *with* Trustee Br. at 36–38.)

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d at 1091–92 (citations omitted).

In *Hirsch*, the debtor (a partnership and its two general partners) perpetrated a Ponzi scheme involving the sale of limited partnership interests in real estate investments. 72 F.3d at 1087. The two general partners pled guilty to wire and bank fraud. *Id.* The trustee's complaint against the partnership's accounting and law firms asserted claims "traceable to one of only two types of events alleged in the complaint: (1) the distribution of misleading PPMs [private placement memoranda] to investors; or (2) the provision of deficient professional services directly to" the general partners and the partnership. *Id.* at 1092.

The Second Circuit explained that Connecticut law recognized the standing of creditors to maintain causes of action against attorneys and accountants for the distribution of misleading private placement memoranda, and "when creditors, such as the investors in the Colonial limited partnerships, have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim." *Id.* at 1093. The Second Circuit therefore held that "the bankruptcy trustee is precluded from" bringing claims based upon distribution of the private placement memoranda. *Id.* at 1093–94.

If the Trustee's claims here were for injuries to the Noteholders resulting from their Note purchases based on misleading Offering Memoranda, *Hirsch* probably would require dismissal for lack of standing.[6] The Trustee's claims here, however, sound not in fraudulent representation to investors but in malpractice.

The *Hirsch* court then proceeded to address the second group of claims, those asserting professional malpractice. The Sec-

ond Circuit noted that despite the debtor's distressed financial condition, "there is at least a theoretical possibility that some independent financial injury to the Debtors might be established (however remote the prospect of any actual net recovery therefor) as a result of the alleged professional malpractice...." *Id.* at 1094. The Second Circuit nevertheless dismissed the malpractice claims based on application of the "*Wagoner* rule," *i.e.*, "because of the Debtors, collaboration with the defendants-appellees in promulgating and promoting the [general partnerships'] Ponzi scheme." *Id.*

The Second Circuit's reference to the "*Wagoner* rule" referred to its decision in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991). In *Wagoner*, the "sole stockholder, director and president" of the debtor corporation sold Notes to fellow Jehovah's Witnesses through accounts at Shearson. *Id.* at 116. The debtor's bankruptcy trustee sued Shearson essentially on two claims: (1) that Shearson churned the corporate accounts, and (2) that "Shearson aided, abetted, and unduly influenced [the debtor's sole shareholder] in making bad trades that dissipated corporate funds." *Id.* at 119. The Second Circuit held that the Trustee had standing to bring the churning claim because the corporation could have brought such a claim. *Id.* As to the second claim, "to the extent this claim alleges money damages to the 'clients of [the debtor],' it belongs only to the creditors and the trustee has no standing to assert it." *Id.* at 119–20. The Second Circuit dismissed that part of the second claim alleging damage to the debtor corporation on a different rationale: "[T]o the extent the demand alleges money damages to [the debtor corporation] itself, it is uncontested that [the corporation's] sole

---

**6.** It would be ironic if, after earlier dismissing the Noteholders' claims against Squadron Ellenoff because Squadron Ellenoff owed them no duty, *see In re Towers*, 1995 WL 571888 at *16–18, the Court now were to dismiss the Trustee's claims against Squadron Ellenoff because those claims inured to Towers' creditors rather than Towers (and thus its Trustee). The Court notes that unlike Connecticut law, New York law does not allow investors to sue attorneys and accountants without something akin to privity. *See In re Towers*, 1995 WL 571888 at *17. Because the

Trustee does not allege a misleading offering memoranda claim here, however, the Court need not determine whether that difference in state law would lead to a different result from *Hirsch*.

While certain of the Trustee's damage theories may amount to an attempt to recover for the Noteholders' losses, that does not affect the Trustee's standing to bring the malpractice claims. As discussed above, the scope of damages need not be decided by the Court at this point in the case.

stockholder and decisionmaker ... not only knew of the bad investments, but actively forwarded them. A claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Id.* at 120.

Thus, when the Second Circuit in *Hirsch* referred to the *"Wagoner* rule," it was referring to dismissal of a bankrupt company's damage claims where the company's sole shareholder participated in the fraudulent scheme. *See In re Mediators, Inc.,* 105 F.3d at 826–27 (agent's misconduct will be attributed to the corporation so as to preclude bankruptcy claims where the corporation's sole shareholder participated in the wrongdoing). The *Wagoner* rule either is application of the in pari delicto doctrine or certainly is closely akin to it. (The Court will discuss in pari delicto in the next section.)

Here, the claim that Towers was damaged by its payment of legal fees to Squadron Ellenoff when Squadron Ellenoff was breaching its duties to Towers is a claim that inures to the corporation and not to its creditors. The Trustee therefore has standing to assert the claim. The *Hirsch–Wagoner* exception— where the sole shareholder participated with the defendant in the fraudulent scheme—is factually inapplicable here: Hoffenberg was not Towers' sole shareholder, nor is it alleged that all of Towers' shareholders participated in Hoffenberg's wrongdoing. Thus, *Hirsch* and *Wagoner* do not deprive the Trustee of standing to allege Towers' malpractice claims against Squadron Ellenoff for damages to Towers, such as legal fees paid to Squadron

Ellenoff, as opposed to damages to the Noteholders.[7] As already discussed, whether the Trustee's damage claims other than for legal fees will survive need not be decided at this time.

## III. *THE IN PARI DELICTO DOCTRINE DOES NOT BAR THE TRUSTEE'S MALPRACTICE ACTION*

Squadron Ellenoff asserts that "[e]ven if the Trustee had standing, under New York law this suit would still be barred by the doctrine of *in pari delicto,* which prohibits any party from seeking affirmative relief for losses caused by its own wrongdoing." (Squadron Ellenoff Br. at 19.)[8]

The in pari delicto defense is "based on two premises: courts should not mediate disputes between wrongdoers, and denying judicial relief to a wrongdoer deters illegal conduct." *See, e.g., In re Granite Partners L.P.,* 194 B.R. 318, 328 (Bkrtcy.S.D.N.Y.1996).

The in pari delicto defense is a matter of state law—here, New York law.[9] *See, e.g., In re Granite Partners L.P.,* 194 B.R. at 328. Whether to impute knowledge of officer or director wrongdoing to the corporation also is a question of state law. *Id.; see also, e.g., O'Melveny & Myers v. FDIC,* 512 U.S. 79, 83–85, 114 S.Ct. 2048, 2053, 129 L.Ed.2d 67 (1994).

For Towers to be considered a wrongdoer for in pari delicto purposes, the actions of Hoffenberg and his cohorts must be imput-

---

**7.** The following hypotheticals may make the issue clearer. If Towers were bankrupt, and Squadron Ellenoff were alleged to have submitted phony bills which were paid by a corrupt employee in Towers' accounts payable department, there would be no doubt that Towers (and therefore the Trustee)—and not its Noteholders or other creditors—would be the proper party to sue to recover its damages (i.e., legal fees). But if the company was a one shareholder-one officer company, and that shareholder agreed with Squadron Ellenoff to overpay legal fees, the recovery should go not to the corporation's Trustee, but its creditors. Here, at the pleading stage, this case is closer to the former scenario than the latter.

**8.** The Trustee argues that the in pari delicto defense does not apply to a bankruptcy trustee. (Trustee Br. at 26–29.) Squadron Ellenoff disagrees. (Squadron Ellenoff Reply Br. at 10–13.) Because the Court concludes that it cannot uphold the in pari delicto defense in this case at the motion to dismiss stage, the Court need not now address whether in pari delicto can apply to a bankruptcy trustee.

**9.** The parties agree that New York law applies. (Squadron Ellenoff Br. at 19–20 ("Since Squadron ·Ellenoff is a New York law firm, Towers' principal place of business was in New York, and the legal services at issue were performed in New York, New York law clearly applies to these claims."); *see* Trustee Br. at 32 n. 8.)

able to Towers.[10] "The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal." *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 899, 488 N.E.2d 828, 829 (1985). The Trustee, however, relies on the "adverse interest exception." (Trustee Br. at 30–32.) "This [adverse interest] exception provides that when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose. To come within the exception, the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes." *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d at 784–85, 497 N.Y.S.2d at 899–900, 488 N.E.2d at 829–30 (citations omitted); *see also, e.g., In re Mediators, Inc.*, 105 F.3d at 827 (the adverse interest "exception is a narrow one and applies only when the agent has 'totally abandoned' the principal's interests.").

The Court here cannot say that the Trustee can prove no set of facts that would justify application of the adverse interest exception. This is especially true as to the Trustee's allegations that Squadron Ellenoff failed to stop Hoffenberg's looting of Towers, which would appear to satisfy the requirement of a total abandonment of Towers' interests.[11]

Finally, Squadron Ellenoff argues that [Towers] is charged with [Hoffenberg's] actions under the "sole decisionmaker" rule. The adverse interest exception rests on the assumption that a disloyal agent will not disclose his actions to his principal. But that assumption make no sense, and the exception does not apply, "where the officer in question is the sole representative of the corporation, there is no one to whom to impart his or her knowledge and no one from he or she may conceal it."

The sole decisionmaker rule applies whenever the actors in question were "in complete control of [the principal's] affairs," or when "there is not the slightest indication that any officer or employee … except [the wrongdoers] exercised any independent choice or judgment."

(Squadron Ellenoff Reply Br. at 15–16, citations omitted). *See also In re Mediators, Inc.*, 105 F.3d at 827 (the "sole actor rule" is that the "adverse interest exception does not

---

**10.** Squadron Ellenoff argues "that the bar of in pari delicto here rests on Towers' own wrongdoing" (Squadron Ellenoff Reply Br. at 13), and thus there is no need to try to impute Hoffenberg's conduct to Towers. The main flaw in Squadron Ellenoff's argument is that it is based on Towers' offering of the Notes; it has no application to Hoffenberg's alleged looting of Towers. Moreover, the argument would eliminate the adverse interest exception. A corporation can only act through its officers, directors and employees. According to the adverse interest exception, knowledge of fraudulent actions taken by corporate agents should not be attributed to the corporation if the agent is acting in its own interests, rather than the corporation's. Acceptance of Squadron Ellenoff's circular reasoning—which basically amounts to a position that fraudulent actions taken by corporate agents in the corporate name should be attributed to the corporation because the actions are taken in the corporate name—would effectively do away with the adverse interest exception, an outcome clearly at odds with New York law.

**11.** The Trustee's brief states:

In accordance with Rule 8, the Complaint provides "a short and plain statement of the

claim[s]." However, the pleadings that Defendant has put before the Court further outline the looting and corporate waste of Towers assets by Hoffenberg and his confederates. For example, they detail: 1) the extravagant expenditures on airplanes, yachts and limousines at Hoffenberg's direction (Omnibus Cplt. ¶¶ 101–09); 2) the diversion of fifty percent of the approximately $1.5 million in fees from healthcare providers (*Id.* ¶¶ 110–19); 3) the exorbitant salaries and benefits received by Hoffenberg and his cohorts (*Id.* ¶¶ 161–69, 293–305); and 4) the fraudulent transfer of Towers assets to Hoffenberg and Hoffenberg controlled entities. (*Id.* ¶¶ 361–368.) All these damages reflect injuries to Towers, as distinct from injuries to Noteholders.

(Trustee Br. at 19–20 n. 4.) The Court believes that the complaint sufficiently covers allegations of looting, consistent with Fed.R.Civ.P. 8, such that amendment of the complaint is not necessary. Were Judge Knapp on reviewing this Report and Recommendation to disagree, I recommend that the Trustee be given leave to amend to further insert into the complaint allegations of Hoffenberg's looting and waste of Towers' assets, and Squadron Ellenoff's breach of fiduciary duty in not alerting Towers' outside directors to the looting.

apply to cases in which the principal is a corporation and the agent is its sole shareholder."). The sole actor rule cannot be applied here on a motion to dismiss. Indeed, all of the cases cited by Squadron Ellenoff were decisions on a summary judgment motion or after trial. (*See* Squadron Ellenoff Reply Br. at 15–16; Trustee Br. at 31–32.) While Hoffenberg may have dominated and controlled Towers, it is undisputed that he was not Towers' sole shareholder. As discussed above, the Trustee is entitled to try to prove that there existed certain outside directors who, if informed by Squadron Ellenoff, would have taken action to stop Hoffenberg's fraudulent and improper activities. (Trustee Br. at 35; *see* Point I above.) Therefore, the sole actor exception to the adverse interest exception cannot be used to dismiss the Trustee's complaint.

Accordingly, the Court will not dismiss the Trustee's complaint based on in pari delicto. Squadron Ellenoff of course is free to raise the in pari delicto defense on a summary judgment motion or at trial.

### CONCLUSION

For the reasons set forth above, I recommend that the Court deny Squadron Ellenoff's motion to dismiss.

The parties are to call my courtroom deputy promptly to schedule the Initial Pretrial Conference.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See* also Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Knapp. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

March 26, 1997.