### In re COUNTY SEAT STORES, INC., et al., Debtors.

Alan Cohen, as Chapter 11 Trustee, of County Seat Stores, Inc. and CSS Trade Names, Inc.; The Official Unsecured Creditors' Committee of County Seat Stores, Inc., Plaintiffs,

v.

National Union Fire Insurance Company of Pittsburgh, Pa., Defendant,

John Belisle, Faith Larsen, John Meinert and Marshall Felestein, Plaintiff–Intervenors,

v.

National Union Fire Insurance Company of Pittsburgh, Pa., Defendant.

Bankruptcy No. 99–B–10010(CB). Adversary No. 01–2366.

United States Bankruptcy Court, S.D. New York.

July 10, 2002.

Bijan Amini, Lita Beth Wright, Storch Amini & Munves, P.C., New York City, for Chapter 11 Trustee.

Charles A. Dale, Daniel J. Kelly, Gadsby Hannah LLP, Boston, MA, for Committee of Unsecured Creditors.

Ronald Alenstein, Victor F. Mustelier, D'Amato & Lynch, New York City, for National Union Fire Ins. Co.

Claude D. Montgomery, Lee P. Whidden, Salans, Hertzfeld, Heilbronn, Christy & Viener, New York City, for Intervenors Sam Forman, Brett Forman and Paul Roth.

Martin Stein, Heller, Horowitz & Felt, P.C., New York City, for Intervenors John Belisle, Faith Larsen, Marshall Felenstein and John Meinert.

## OPINION

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

This matter comes before the Court on the Chapter 11 Trustee's, Official Unsecured Creditors' Committee's and Intervenors' Motions for Partial Summary Judgment. Although the Trustee and the Intervenors (collectively referred to as the Movants) have filed separate complaints in this matter, the gist of the relief being sought by the Movants is essentially the same; they want a declaratory judgment from this Court that a certain exclusion in the director and officer policy issued by the defendant does not apply to bar coverage in a separate action brought by the Trustee against the Intervenors who are former directors and officers of the Debtors.

There is but one issue that must be decided by this Court and that issue is whether the Chapter 11 Trustee is an entity separate and distinct from the Debtor for purposes of the "insured versus insured" exclusion contained in Exclusion 4(i) of the Director and Officer Policy issued by the defendant.

## PROCEDURAL HISTORY

The procedural history in this case is long and complex, but with luck, its peaks and valleys can be safely traveled without losing sight of the ultimate point. On January 22, 1999 County Seat and CSS Tradenames, Inc. filed a second voluntary petition for Chapter 11 relief. An Official Unsecured Creditors' Committee was formed on February 3, 1999, and Alan Cohen was appointed as the Chapter 11 Trustee on March 19, 1999. On October 30, 2000 the Court granted the Trustee's and the Committee's Motion for an Order Conferring Joint Standing to Prosecute Causes of Action Against the Directors and Officers.[1]

Following an investigation, on September 20, 2000, the Trustee commenced an adversary proceeding (the "Trustee Action") naming seven former directors and officers seeking damages in excess of $100 million. In his complaint, the Trustee alleges that the directors and officers caused County Seat's bankruptcy and liquidation by committing a number of acts in their official capacities that essentially amount to breaches of fiduciary duty, fraudulent conveyance, corporate waste and mismanagement. The adversary proceeding against the directors and officers is stayed pending a determination of the coverage issue presented in this adversary proceeding.

National Union Fire Insurance Company of Pittsburgh ("National Union" or the "Insurer") denied coverage relying on the "insured versus insured" exclusion and argued that claims brought by the Trustee against the directors and officers belong to, and can only be asserted on behalf of County Seat, therefore the Trustee is barred by the exclusion. Additionally, on January 5, 2001 National Union filed a Demand for Arbitration against the directors and officers seeking a declaration that its denial of coverage pursuant to the "insured versus insured" exclusion was correct.

---

1. Throughout this opinion the Court will refer to the Trustee, but such references also include the Committee.

In response, the Trustee brought the herein adversary proceeding seeking under Count I of his complaint a declaratory judgment that "(a) the insured versus insured exclusion to the D & O Policy does not apply to the claims raised in the [Trustee Action] and, therefore, (b) the D & O Policy constitutes an asset of the Debtor's bankruptcy estates".

Apparently following the Trustee's lead, the directors and officers moved to intervene in the underlying action. Leave to Intervene was granted on March 30, 2001 and subsequently, the directors and officers filed Intervenors' Complaints and Motions for Partial Summary Judgment seeking a declaratory judgment similar to that sought by the Trustee. In addition, the Intervenors seek in their partial summary judgment motions an award of immediate reimbursement of losses incurred by them to date as result of (a) the Trustee's investigation and (b) their defense of the action brought against them by the Trustee.

As this matter is core pursuant to § 157(b)(2)(A) and § 157(b)(2)(O), the Court will render a final adjudication.

## UNCONTROVERTED FACTS

On September 27, 1997 National Union issued a Directors, Officers and Corporate Liability Insurance Policy numbered 856–93–23 ("D & O Policy" or the "Policy") to County Seat, Inc. in consideration of premiums paid by County Seat. The D & O Policy, under Coverage A, insures the directors and officers of County Seat for any "loss" arising from a Claim for any actual or alleged "wrongful act" committed in their capacities as directors and officers. In accordance with Clause 8 of the Policy, the Insurer is obligated to advance to the directors and officers any defense costs associated with any claims brought against them. Section 4 of the Policy lists thirteen exclusions one of which is the exclusion

that gives rise to the underlying suit the "insured vs. insured" exclusion listed as exclusion 4(i). The liability limit is twenty—five million ($25,000,000) dollars.

Exclusion 4(i), the "insured vs. insured" exclusion, relieves the Insurer from any liability to cover any claim made against an insured that is brought by an insured, or the Company, or any security holder of the Company. With regard to the latter category of excluded claimants, security holders, there is an exception. If the security holder brings a claim against an insured and that claim is "instigated and continued totally independent of, and totally without the . . . assistance of, or active participation of" the company, the insurer will cover the claim.

Under the Policy, the term Company is defined as the "Named Corporation designated in Item 1 of the Declarations and subsidiary thereof." When one refers to Item 1 of the Declarations, the "Named Corporation" is County Seat, Inc. In fact County Seat, which includes its subsidiaries, is the only entity that is listed. A "Loss" is defined as "damages, judgments, settlements and Defense Costs." "Defense Costs" are reasonable and necessary fees, costs and expenses consented to by the Insurer resulting from the investigation, defense and appeal of a claim.

Subsequent to the Trustee filing the Trustee Action, the Intervenors, on several occasions, sent letters to the Insurer requesting that National Union advance defense costs. The Intervenors' requests were denied.

## ARGUMENTS OF THE PARTIES

### 1. The Trustee

The Trustee, the original movant for summary judgment, poses a straightforward argument. The Trustee's main argument centers around case law that has

held that similar (in some instances the very same) "insured vs. insured" exclusions do not extend to trustees in bankruptcy, in part because the trustee is not the same entity as the pre-petition company and also because the purpose of the clause—to prevent collusive suits is not implicated because a bankruptcy trustee is not acting on behalf of any entity that could potentially engage in collusion. The Trustee further argues that the exclusion as drafted does not specifically and clearly identify or define the term "insured" to include bankruptcy trustees. As such, under the principals of contract interpretation, the exclusion is ambiguous and must be construed against the insurer.

### 2. The Intervenors

The Intervenors have also filed a Motion for partial summary judgment seeking a declaratory judgment similar to that sought by the Trustee and in addition the Intervenors seek summary judgment on Count II of their complaint that seeks immediate reimbursement of all losses incurred by them to date.

In support of their Motion, the Intervenors present an argument that runs along the same vein as that of the Trustee, specifically, the exclusion does not apply to the Trustee because he is not the same entity as the pre-petition debtor, there is no collusion and the exclusion is ambiguous. With regard to summary judgment on Count II of their complaint, the Intervenors argue that the policy unambiguously provides for the advance and coverage of defense costs, that National Union cannot rely on an inapplicable exclusion to disclaim coverage and that although the policy does not require National Union to defend, National Union is required to advance defense costs.

### 3. National Union

In response, National Union avers that, contrary to the Trustee's contention, under controlling law the exclusion applies to bar the claims of the Trustee "standing in the shoes of County Seat." National Union argues that when a bankruptcy trustee asserts claims belonging to the debtor that accrued pre-petition, the trustee is the same person as the debtor and as such, the insured v. insured exclusion applies to bar the Trustee just as it would bar the pre-petition company.

### SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56, if the Court, viewing the record in a light most favorable to the nonmoving party, determines that the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In making its determination, this Court must reach a conclusion as to whether there exists "a genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir.1993). A fact is "material" if it "might affect the outcome of the suit under governing law." *In re Deltacorp, Inc.*, 179 B.R. 773, 780 quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if it provides a basis for a "rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Once the moving party properly supports its motion for summary judgment, the nonmoving party must establish a genuine issue of material fact in order to preclude the granting of summary judgment." *Rexnord Holdings, Inc. v. Bidermann*, 21

F.3d 522, 525–26 (2d Cir.1994). In cases involving the interpretation of contracts, summary judgment is appropriate where the language at issue is plain and unambiguous. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 148 (2d Cir. 1993).

## CONTRACT INTERPRETATION

 Insurance contracts are construed strictly against the insurer. *United States Fidelity & Guaranty Co. v. Annunziata*, 67 N.Y.2d 229, 232, 501 N.Y.S.2d 790, 791, 492 N.E.2d 1206 (1986). Under New York State law, any exclusion from coverage must be specific and clear and exclusions "are not to be extended by interpretation or implication." *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272. Once the insured shows that a loss has occurred, the burden is upon the insurer to prove that an exclusion applies. *M.H. Lipiner & Son, Inc. v. Hanover Insurance Co.*, 869 F.2d 685, 687 (2d Cir.1989).

 When a dispute exists between the parties as to the proper interpretation of language of an insurance policy, a court should seek to determine the parties' intent from the language of the policy by construing the policy as a whole. *Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir.1995); *Show Car Speed Shop, Inc. v. United States Fidelity & Guaranty Co.*, 192 A.D.2d 1063, 1064, 596 N.Y.S.2d 608, 609 (4th Dept. 1993); *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907 (1973). When making such a determination, the court should be guided by the "reasonable expectation and purpose of the ordinary business man when making an ordinary business contract[.]" *Album Realty Corp. v. American Home Assurance Co.*, 176 A.D.2d 513, 515, 574 N.Y.S.2d 704,

706 (1st Dep't 1991) (mem.) The mere fact that the parties to a dispute assert opposing interpretations of contractual language does not constitute ambiguity. *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091 (2d Cir.1993). An ambiguity does exist when a word or phrase is "capable of more than a single meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." [citation omitted]. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988).

### The Language of the Exclusion

Exclusion 4(i) provides that the insurer shall not be liable to make any payment for loss in connection with a claim made against an insured "which is *brought by* any insured or by the company; or which is brought by any security holder of the company" (emphasis added).

 This Court does not find the language of exclusion 4(i) to be ambiguous. The crucial language in the exclusion is "brought by" which focuses solely on the identity of the party asserting the claim. If the trustee is asserting the claim, the exclusion is not triggered because he is not the company or an insured.

## TRUSTEE STANDING IN SHOES OF COUNTY SEAT

National Union adamantly argues that the exclusion is applicable to the trustee's claims because he "stands in the shoes of County Seat" in that he is asserting claims that accrued in favor of the Debtors prepetition. This Court agrees with the defendant that the Trustee is asserting claims that *belonged* to County Seat as of the date of filing its bankruptcy petition. However, the Court does not agree that by

virtue of the trustee asserting claims that at one time belonged to the Debtor, he merely stands in the shoes of the Debtor or has somehow assumed the identity of the Debtor. In fact, any argument founded on the premise that a Trustee asserting claims founded on the rights of the Debtor assumes the identity of the Debtor exhibits the proponent's lack of understanding of the Bankruptcy Code and the statutory role and duty of a trustee appointed pursuant to the applicable sections of the Bankruptcy Code.

A bankruptcy trustee is a legal entity separate and distinct from the debtor. *Rieser v. Baudendistel (in re Buckeye Countrymark, Inc.)*, 251 B.R. 835, 840 (Bankr.S.D.Ohio 2000); *see also In re Fidelity America Financial Corporation*, 43 B.R. 74, 77 (Bankr.E.D.Pa.1984) (stating that "[t]he trustee is not the same entity as the pre-bankruptcy debtor, but is a new entity with his own rights and duties, subject to the supervision of the bankruptcy court"). The trustee's duty is owed to the bankruptcy estate, and upon his appointment, he undertakes to act in the best interest of general creditors in collecting and preserving estate assets. *See In re Fidelity America Financial Corporation*, 43 B.R. at 77; *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (stating that a bankruptcy trustee's fiduciary duty is designed for the "the protection of the entire community of interests" of a debtor); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518 (Bankr.E.D.N.Y. 1989) (explaining that a debtor-in-possession, like a trustee, exercises its powers in trust for the benefit of creditors).

Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded on the rights of the debtor and to an extent, certain rights of the debtor's creditors. *See e.g.,* 11 U.S.C. §§ 541, 544, 547. Upon the filing of a petition for relief under Chapter 11, any claims belonging to the company pre-petition automatically, by operation of law, become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1) (providing that upon the filing of a petition a bankruptcy estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case"). *See also Gore v. Kressner*, 159 B.R. 428, 431–32 (Bankr. S.D.N.Y.1993); *Cumberland Oil Corp. v. Thropp et al.*, 791 F.2d 1037, 1042 (2d Cir.1986) (explaining that section 541 has been construed to prevent individual creditors and shareholders from suing to enforce the rights of a debtor corporation as this right lies solely in the hands of the trustee).

Pursuant to § 323, the trustee, and only the trustee, can sue and be sued on behalf of the estate. 11 U.S.C. § 323. When the trustee commences an action therefore, he is doing so on behalf of the estate in furtherance of his duty as defined by Congress. The fact that the claims that compromise the estate may have arisen pre-petition in favor of the debtor is inconsequential. The debtor cannot bring them because the debtor is no longer the owner of the claims. *Gore v. Kressner*, 159 B.R. 428, 431–32 (Bankr.S.D.N.Y. 1993). Likewise, shareholders and creditors are also barred from asserting the claims. *Pepper v. Litton*, 308 U.S. at 307, 60 S.Ct. 238; *In re Granite Partners, L.P.*, 194 B.R. 318, 325 (Bankr.S.D.N.Y.1996).

National Union argues that the Trustee's reliance on case law interpreting the language of similar (if not the exact same) insured v. insured exclusions in favor of the FDIC is misplaced because the FDIC is a regulatory banking agency whereas here there is just an "ordinary trustee." National Union is misguided. As explained above, a bankruptcy trustee is a

statutory creature whose role is analogous to that of the FDIC.

Under the National Bank Act the FDIC represents the interests of the creditors and depositors of a failed bank. Similarly, a bankruptcy trustee, once appointed, is the legal guardian of the bankruptcy estate which means at times he must assert the rights of the debtor and at other times he must assert rights of the creditors. The ultimate benefit runs to the estate and the general creditors who will eventually receive a distribution out of the estate, hence regardless of the original source of the claims the trustee, by asserting those claims that he has authority to pursue, is fulfilling the duty that he owes the estate.

It is exactly this status of the trustee as a statutory invention, with powers that far exceed those of a corporation or debtor-in-possession, that affords him dissimilar treatment from that afforded others, including debtors-in-possession. *See e.g., Young v. Paramount Communications, Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 943 (Bankr.S.D.N.Y.1995); *accord In re C & R Beer & Soda Inc.*, 186 B.R. 173, 178 (Bankr.E.D.N.Y.1995). Simply stated, a bankruptcy trustee charged with a statutory duty and endowed with special statutory powers, is an independent and disinterested entity, separate and distinct from the debtor, as well as the pre-petition company, and as such does not strictly "stand in the shoes" of the debtor. Nor does he assume the identity of the debtor.

### CONCEPT OF CLAIM OWNERSHIP

In further support of its contention that the insured v. insured exclusion applies to the Trustee's claims, National Union relied heavily on the notion that the claims are owned by County Seat and if County Seat had brought them the exclusion would apply therefore the exclusion should also bar the Trustee. This argument, upon consid-

ering the trustee's role and duties under the Bankruptcy Code is legally unsound, and is not supported by the plain meaning of the exclusion.

With regard to the argument's legal flaws, the Trustee's complaint against the former directors and officers alleges acts of breach of fiduciary duty, corporate waste and mismanagement. Generally, these claims belong to and can be enforced by the corporation or through a shareholders' derivative action. As explained above, these claims become property of the estate immediately upon the commencement of a bankruptcy case pursuant to § 541 of the Bankruptcy Code. As claims of the bankruptcy estate, only the trustee can bring them and County Seat no longer owns them nor can County Seat assert them. *Pepper v. Litton*, 308 U.S. 295, 307–08, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Keene Corp. v. Coleman (In re Keene)*, 164 B.R. 844, 853 (Bankr.S.D.N.Y.1994); *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 801 (Bankr.S.D.N.Y. 1990).

Turning to the language of the exclusion, if County Seat were not in bankruptcy and had brought these claims, without doubt, the insured v. insured exclusion would apply to bar the claim because County Seat is an insured under the policy and is the "Company" identified in the policy. However, the exclusion carves out an exception for shareholders bringing suits independent of and without the assistance of County Seat. Hence, if the suit was commenced by shareholders acting independent of County Seat, the claim clearly would have been allowed notwithstanding the exclusion. Such a result belies any contention made by the defendant that the Trustee, acting independent of the Debtor, should be barred. By carving out actions brought by independently acting security holders, it appears that the parties intend-

ed to make the proceeds of the policy available to those parties who may call upon the directors and officers to answer for any misdeeds and to provide compensation for any wrongdoings that are proven. National Union, as the drafter who created this loophole, agreed to be liable so long as there is no collusion. The Trustee as an independent entity, acting "as a genuinely adverse party to the defendant, officers and directors, there is no threat of collusion." *In re Buckeye*, 251 B.R. at 840–41. Furthermore, if claims brought by truly adverse security holders would not be barred, and the intent of the parties to preclude collusive suits is preserved, the Court finds no reason, in the policy or in the law, why the Trustee should be barred. National Union has failed to provide and adequate reason.

## TRUSTEE AS AN ASSIGNEE

National Union relies heavily upon an unpublished Opinion and Order issued in 1993 by the Honorable Judge Sotomayor of the District Court of the Southern District of New York in the case of *Niemuller v. National Union Fire Insurance Co. of Pittsburgh, PA.* (92 Civ. 0070(SS)). In that action, Niemuller, the plaintiff, was a former director and officer of Qantel Corporation. Qantel filed suit against Niemuller for breach of an employment agreement and his fiduciary duties to Qantel. Some time after filing suit, Qantel assigned all of its rights and claims against Niemuller to Decision Data Credit Corporation (DDCC) pursuant to an asset purchase agreement. Prior to entering the Asset Purchase Agreement, Qantel had purchased a director and officer policy from National Union that was not unlike the disputed policy in this case and it contained the same insured v. insured exclusion in clause 4(i) of the policy.

Niemuller, submitted his claim to National Union for advancement of his defense costs. Niemuller's request was summarily denied. He brought an action against National Union seeking a declaratory judgment that National Union is obligated to advance him defense costs wherein he filed a Motion for Summary Judgment. Niemuller cited to a number of cases interpreting insured v. insured clauses in favor of the FDIC in support of his contention that the exclusion does not cover claims of Qantel brought by successors-in-interest. The district court denied Niemuller's Motion for Summary Judgment and dismissed his complaint holding that DDCC, the assignee, stepped into the shoes of Qantel and the exclusion should be read to apply to ordinary assignees continuing claims brought by the assignor. Such a holding removes the burden of determining whether an assignment is non-collusive from the shoulders of the insurers and the courts.

Although National Union proffers this case as support for its arguments opposing the Trustee's Motion, this Court finds that Judge Sotomayor's holding does not conflict with that of the *Fidelity & Deposit Co. of Maryland v. Zandstra* court and other cases that have adopted its approach. 756 F.Supp. 429 (N.D.Cal.1990). Rather, Judge Sotomayor recognized that the FDIC is not an ordinary assignee and thus is due "dissimilar treatment." *Niemuller,* 1993 WL 546678, *4, 1993 U.S. Dist. LEXIS 18476, *11. This Court's ruling is in line with that of Judge Sotomayor. It is the trustee's position as an officer of the court and statutory entity, and not a mere assignee or successor—in—interest, that requires a holding that he is not the same entity as County Seat, and as a truly adverse party does not (or should not) invoke fears of collusion.

## OPINIONS BY THE 8th and 11th CIRCUITS

National Union urges the Court to adopt the reasoning of the 8th and 11th Circuits. The Courts of Appeals for both the 8th and 11th Circuits affirmed decisions by the district courts in the respective Circuits that held that the insured v. insured exclusion bars the claims of a bankruptcy trustee. The 11th Circuit affirmed without opinion and although the 8th Circuit issued an opinion it was very brief and essentially adopted the reasoning of the district court. Hence, this Court turns to the written opinions of the district courts to ascertain the reasoning behind the decisions.

The case of *Reliance Insurance Co. of Illinois v. Weis, et al.* (*"Reliance"*), an opinion issued by a district court in the 8th Circuit is arguably the first case dealing with an insured v. insured exclusion in the bankruptcy context. 148 B.R. 575 (E.D.Mo.1992). In *Reliance*, the representative of the Plan Committee brought suit against certain former officers and directors of a bankrupt corporation. The insurance company sought a declaration from the court that the director and officer policy did not provide coverage pursuant to the insured v. insured exclusion. The district court ruled in favor of the insurer reasoning that there is no legal distinction between the debtor corporation and its bankruptcy estate, therefore any claim brought by the Plan Committee was on behalf of the company.

Later in 1995, the District Court for the Northern District of Georgia, in the 11th Circuit, using the same reasoning as the *Reliance* court—that there is no "significant legal distinction between the company and the Trustee for the bankruptcy estate"—ruled that the insured v. insured exclusion in that case barred claims brought by the Trustee. *See National Union Fire Insurance Co. of Pittsburgh,* *PA. v. Olympia Holding Corp. et al.,* Case no. 1:94–cv–2081–GET (9/18/1995) *affirmed without opinion National Union Fire v. Olympia Holding,* 148 F.3d 1070 (Table) (11th Cir.1998).

This Court disagrees with the reading and interpretation of the Bankruptcy Code made by the learned district courts in Georgia and Missouri and chooses instead to align itself with the reasoning of the courts in the 1st, 3rd, 6th and 9th Circuits who have ruled that insured v. insured exclusions do not apply for reasons similar to those stated in this opinion. *See Alstrin v. St. Paul Mercury Insurance Co. et al.,* 179 F.Supp.2d 376 (Del.2002); *accord In re Pintlar Corp.,* 205 B.R. 945 (Bankr.Idaho 1997) *affirmed Cigna Insurance Co. v. Gulf USA Corp. et al.,* 1997 WL 1878757, 1997 U.S. Dist. LEXIS 23816 (Idaho 1997); *accord Gray v. Executive Risk Indemnity, Inc. et al. (In re Molten Metal Technology, Inc.),* 271 B.R. 711 (Bankr.D.Mass.2002) *affirmed Gray v. Executive Risk Indemnity, Inc. et al.,* 2002 WL 923936, 2002 U.S. Dist. LEXIS 8155 (D.Mass.2002); *accord Rieser v. Baudendistel (In re Buckeye Countrymark, Inc.),* 251 B.R. 835 (Bankr. S.D.Ohio 2000).

## SUMMARY

This Court finds as follows:

1. Trustee is an entity separate and distinct from the pre-petition corporation and the Debtor.

2. The Trustee brought the action against the former officers and directors pursuant to his duties as prescribed by the Bankruptcy Code and in his capacity as a Chapter 11 trustee duly appointed by this Court. Furthermore, the purpose of the Trustee's action against the former directors and officers is to benefit the bankruptcy estate with the intent of having the potential proceeds distributed to the Debt-

ors' creditors pursuant to the Bankruptcy Code.

3. The language of the insured v. insured exclusion is not ambiguous. The words "brought by" refer specifically to those entities and individuals who are defined and named in the policy. "Company" as defined by the policy means County Seat and its subsidiaries and does not include or contemplate a bankruptcy trustee.

4. The parties intended the insured v. insured exclusion to prevent collusive suits. The Trustee, as a truly adverse party, does not, or should not, raise concerns of collusion because the Trustee does not represent the interests of any party that could be a participant of a conspiracy to collude.

5. For the reasons painstakingly delineated in this opinion. The Motions for Partial Summary Judgment filed by the Trustee and Official Unsecured Creditors' Committee and the Intervenors is granted.

### THE ADVANCEMENT OF DEFENSE COSTS

As this Court has ruled that the Trustee's claims are not barred by the exclusion clause, National Union is required to advance defense costs pursuant to the provisions contained in the policy. Specifically, the third notice paragraph on the cover page of the policy states that "the insurer must advance defense costs payments pursuant to the terms herein prior to the final disposition of a claim." Coverage A of the policy, which specifically covers the directors and officers, provides that "the insurer shall, in accordance with and subject to Clause 8, advance defense costs ... prior to its final disposition." Clause 8 reiterates the Insurer's obligation to advance defense costs and includes two conditions precedent that a written request be made by the Insured and that the Insurer consents. However, the Insurer cannot unreasonably withhold its consent.

National Union does not dispute that it received a written request for the advance of defense costs. Its only contention with regard to the relief requested by the Intervenors is that the claim for which the Intervenors seek coverage is not covered by the policy therefore there is no duty to advance.

This Court has decided that the Trustee's claims are not barred by the exclusion therefore, National Union cannot rely on the possibility of the claim not being covered as grounds to refuse the Intervenors request for defense costs. Furthermore, the law in this district is clear that "once the action against the insured has been found to be within the coverage of the policy the insurer must pay the insured's defense costs as they are incurred." *McGinniss v. Empl. Reins. Corp.*, 648 F.Supp. 1263, 1271 (S.D.N.Y. 1986). *See also PepsiCo Inc. v. Continental Cas. Co.*, 640 F.Supp. 656, 659–60 (S.D.N.Y.1986) (finding that defense costs are to be paid as incurred).

The Intervenors' Motions for partial Summary Judgment is therefore granted.

### CONCLUSION

For the foregoing reasons, the Trustee's and Intervenors' Motions for Partial Summary Judgment are granted. The Trustee is directed to settle an Order consistent with this Opinion on five (5) days notice.