**AMERICAN TISSUE, INC., a Chapter 11 bankruptcy debtor-in-possession Plaintiff,**

v.

**ARTHUR ANDERSEN, L.L.P., Defendant.**

No. 02 Civ. 7751(SAS).

United States District Court, S.D. New York.

May 5, 2003.

tion of certain ATI financial (mis)statements. Because the false financials were the work of ATI's sole shareholders, ATI lacks standing to bring these claims, which rightly accrue to ATI's creditors. The case is therefore dismissed for want of subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1).

Charles H. Lichtman, Berger Singerman P.A., Fort Lauderdale, FL, Susan G. Rosenthal, Brown Raysman Millstein Felder & Steiner LLP, New York, NY, for Plaintiff.

John A. Brock, Michael R. Bromwich, Tommy P. Beaudreau, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

American Tissue, Inc. ("ATI"), a Chapter 11 bankruptcy debtor-in-possession, is suing Arthur Andersen, L.L.P. ("Andersen") for its allegedly negligent certifica-

## I. BACKGROUND

■ The following facts are drawn from ATI's complaint in this case ("Compl."), its complaint in the adversary proceeding styled *American Tissue Inc. v. Gabayzadeh (In re American Tissue, Inc.)*, Adv. Proc. No. 02–4940 (Bankr.D. Del. filed Aug. 1, 2002) (the "Insider Complaint" or "Insider Compl."), Ex. 8 to the 1/30/03 Declaration of Tommy P. Beadreau, counsel to Andersen ("Beaudreau Decl."), and certain of ATI's public Securities and Exchange Commission filings.[1]

1. The parties differ as to what material the Court may consider. Andersen has submitted the documents noted and cites numerous cases that stand for the proposition that a court may consult evidence outside the pleadings on a Rule 12(b)(1) motion. *See* Memorandum of Law in Support of Motion to Dismiss ("Def.Mem.") at 6; Reply Memorandum in Support of Motion to Dismiss ("Reply Mem.") at 4–5. But ATI responds by insisting that Andersen has engaged in "blatant disregard of simple and commonly known motion practice rules" and that Andersen's motion "doesn't even come close to trying to confine its arguments to the four corners of the Complaint." ATI's Memorandum of Law in Opposition to Andersen's Second Rule 12 Motion to Dismiss ("Pl.Mem.") at 3–5. To bolster its argument, ATI cites well-worn 12(b)(6) cases such as *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Indeed, ATI even tries to interpose a motion to strike some of Andersen's evidence, characterizing it as yet another "improper attempt to interject prejudicial matters outside the four corners of the Complaint." ATI's Motion to Strike Arthur Andersen's Supplemental Declaration of Tommy P. Beaudreau at 1.

I am well aware of the lenient pleading standard contemplated by the Federal Rules of Civil Procedure. *See In re Initial Public Offering Sec. Litig.,* 241 F.Supp.2d 281, 321–28 (S.D.N.Y.2003) (discussing pleading under the Federal Rules); *see also In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000,* MDL No. 1428, 2003 WL 1918296, at *12 (S.D.N.Y. Apr. 21, 2003); *Maalouf v. Salomon Smith Barney, Inc.,* No. 02 Civ. 4770, 2003 WL 1858153, at *3 (S.D.N.Y. Apr.10, 2003); *Astroworks, Inc. v. Astroexhibit, Inc.,* 257 F.Supp.2d 609, 619 (S.D.N.Y.2003). But this motion does not attack the sufficiency of ATI's pleading. It is the nature of the motion—not the plaintiff's characterization of it—that controls these proceedings. *See Robinson v. Government of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001) ("[H]ow the district court proceeds to resolve the motion to dismiss depends upon whether the motion presents a factual challenge.") (quoting *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir. 2000)). It is thus appropriate to consider all of the facts and admissions detailed herein.

## A. The Parties

ATI is a Delaware corporation and a Chapter 11 bankruptcy debtor-in-possession whose principal place of business is in Hauppauge, New York. Compl. ¶ 1. ATI's bankruptcy is currently pending in the United States Bankruptcy Court for the District of Delaware, case number 01–10370. *Id.* ATI, along with twenty-seven debtor subsidiaries, was a leading manufacturer and distributor of consumer paper products, such as paper towels and toilet paper. *Id.*

ATI is a wholly-owned subsidiary of Middle American Tissue, Inc. ("MATI"), also a Delaware corporation. *Id.* ¶ 7. MATI is, in turn, wholly owned by Super American Tissue, Inc. ("SATI"). *Id.*[2] Finally, SATI is wholly owned, in equal parts, by Mehdi Gabayzadeh and his family trusts, and by Nourollah Elghanayan and his family members. Insider Compl. ¶ 31. In other words, Gabayzadeh and Elghanayan and their families "beneficially own 100% of the outstanding shares of [ATI's] common stock. . . . As a result, Messrs. Elghanayan and Gabayzadeh and their respective family members or trusts control[ed] . . . [ATI's] management, policies and financial decisions. . . ." 12/29/00 ATI Form 10–K Annual Report for Fiscal Year 2000 ("Form 10–K") at 31, Ex. 2 to the Beaudreau Decl. In addition to owning the company, Elghanayan served as ATI's Chairman of the Board and Gabayzadeh served as its President and Chief Executive Officer. *Id.* ATI alleges that Gabayzadeh and Elghanayan were ATI's alter egos: they "completely disregarded the corporate form of [ATI and its various related] companies. The companies had virtually identical boards of directors, they had almost identical officers, they acted by and through the same representatives and agents and they completely disregarded corporate formalities such as regular meet-ings of their respective boards of directors." Insider Compl. ¶ 40.

Andersen, an Illinois limited liability partnership, is an accounting and consulting firm that at all relevant time did significant business in New York. Compl. ¶ 2.

## B. The False Financials

Andersen was retained by ATI to audit its 1999 and 2000 financial statements, to review its 2001 quarterly financials, to perform various accounting tasks in connection with an attempted debt offering in the summer of 2001, and to engage in periodic consulting work. *Id.* ¶ 11. In particular, Andersen audited ATI's year-end consolidated financial statements for the years 1998, 1999 and 2000. *Id.* ¶ 14. Andersen certified each year's financial statements without qualification. *Id.* ¶ 15. *See also* Form 10–K at F–23.

Nonetheless, ATI was forced to admit the existence of material misstatements in those financial statements. Compl. ¶ 17.

American Tissue Inc. Announces Financial Statement Inaccuracies and CFO Resignation

Hauppauge, New York, September 5, 2001—American Tissue Inc. announced today that it has reason to believe that its consolidated financial statements for its fiscal years ended September 30, 1999 and 2000, as well as its consolidated financial statements for each of the first three quarters of fiscal 2000 and 2001, contain material inaccuracies. In connection therewith, the Company accepted Edward I. Stein's resignation as Executive Vice President and Chief Financial Officer effective September 3, 2001. PricewaterhouseCoopers LLP, recently hired as the Company's financial advisor, is conducting an investigation to determine the facts as to these matters.

*Id.*

2. Neither MATI nor SATI is in bankruptcy.

9/5/01 ATI Form 8–K ("Form 8–K"), Ex. 3 to the Beaudreau Decl.

ATI has since identified a number of the misstatements in its annual financials, including:

- Overstatement of accounts receivable. Compl. ¶ 19(a); Insider Compl. ¶ 62.

- Overvaluation of inventory, particularly obsolete inventory. Compl. ¶ 19(b); Insider Compl. ¶ 61.

- Failure to disclose inflated sales and inventory reports. Compl. ¶ 19(c); Insider Compl. ¶ 64.

- Failure to disclose, or incomplete disclosure of, substantial inter-company transfers of cash, accounts receivable, equipment and inventory. Compl. ¶ 19(d); Insider Compl. ¶ 63.

- Failure to disclose, or incomplete disclosure of, information about insider loans. Compl. ¶ 19(e); Insider Compl. ¶¶ 51–57.

- Misstated inter-company debt between ATI and certain of its non-debtor affiliates. Compl. ¶ 19(f); Insider Compl. ¶¶ 64, 67–73.

- Overstatement of ATI's overall financial performance and profitability. Compl. ¶ 19(g); Insider Compl. ¶¶ 58–66.

- Failure to institute procedures to assure accurate financial reporting by ATI's internal accounting staff. Compl. ¶ 19(h); Insider Compl. ¶ 47.

- Misidentification of ATI's assets and cash flow needs with respect to the issuance of debt instruments (i.e., bonds). Compl. ¶ 19(i); Insider Compl. ¶ 59.

In short, ATI's financial statements for fiscal years 1999 and 2000, and for the first three quarters of 2001, were riddled with inaccuracies.

Those inaccuracies were caused, it is alleged, by Gabayzadeh and Elghanayan's malfeasance. Indeed, the essence of the Insider Complaint is that Gabayzadeh and Elghanayan "participated in and allowed various financial improprieties to take place," Insider Compl. ¶ 46, namely, the various misstatements catalogued above. Ultimately, Gabayzadeh and Elghanayan's "action and inaction caused the artificial perpetuation of [ATI's] existence past the point of insolvency," id. ¶ 2, making bankruptcy a foregone conclusion.

**C. The Fallout**

One week after ATI issued its Form 8–K admissions, it declared bankruptcy. See Bankruptcy Petition, *In re American Tissue, Inc.*, No. 01–10370 (Bankr.D. Del. filed Sept. 10, 2001), Ex. 4 to the Beaudreau Decl. Subsequently, Brent I. Kugman & Associates (now Kugman Associates) was appointed Chief Restructuring Advisor to ATI. Insider Compl. ¶ 42. On November 2, 2001, ATI, Gabayzadeh and Elghanayan, and Kugman Associates entered into a separation agreement whereby Gabayzadeh and Elghanayan resigned as directors and officers of ATI and its various related debtor entities. *Id.* ¶ 43.

On August 1, 2002, ATI filed the Insider Complaint, seeking a declaration that Gabayzadeh and Elghanayan are alter egos of ATI and damages from them for breach of fiduciary duty and unjust enrichment, among other things. See Insider Compl. As noted, the gravamen of the Insider Complaint is that Gabayzadeh and Elghanayan "misused their control" of ATI, *id.* ¶ 2, and that Gabayzadeh "actively participated" in accounting irregularities and the manipulation of ATI's financials, and that "Elghanayan either knew or should have known of [the misconduct] and did nothing to stop [it]," *id.* ¶ 59.[3] In addition, the Insider Complaint noted the existence of

---

**3.** Gabayzadeh never responded to the Insider

Complaint and on December 6, 2002, the

an ongoing criminal investigation into the accounting irregularities at ATI. *See id.* at n. 2.

That investigation bore fruit, resulting in the indictment of ATI, Gabayzadeh, and a number of high-ranking ATI employees on criminal fraud charges. *See* Indictment, *United States v. American Paper Corp.*, No. 03 Cr. 162 (E.D.N.Y. dated Feb. 12, 2003), Ex. 1 to the Supplemental Declaration of Tommy P. Beaudreau ("Beaudreau Supp. Decl."); Information, *United States v. John Lorenz*, No. 02 Cr. 1017 (E.D.N.Y. unsealed Mar. 10, 2003), Ex. 3 to the Beaudreau Supp. Decl. Indeed, both Edward Stein, ATI's then Chief Financial Officer and Executive Vice President, and John Lorenz, ATI's then Vice President of Finance, pleaded guilty to fraud charges. *See* Criminal Cause for Guilty Plea, *United States v. American Paper Corp.*, No. 03 Cr. 162 (E.D.N.Y. dated Mar. 7, 2003) (reflecting Stein's guilty plea to one count each of conspiracy to commit securities fraud and bank fraud), Ex. 2 to the Beaudreau Supp. Decl.; Beaudreau Supp. Decl. ¶ 7 (noting that Lorenz pled guilty to one count of conspiracy to commit bank fraud). In addition, the SEC filed a civil complaint against ATI, Gabayzadeh, Stein and Lorenz alleging securities fraud. *See* Complaint, *SEC v. American Tissue, Inc.*, No. 03 Civ. 1162 (E.D.N.Y. dated Mar. 10, 2003), Ex. 4 to the Beaudreau Supp. Decl.; *see also SEC Charges American Tissue and Three Former American Tissue Officers with Accounting Fraud*, SEC Litig. Release No. 18022 / Accounting & Auditing

Enforcement Release No. 1735 (Mar. 10, 2003), Ex. 5 to the Beaudreau Supp. Decl.[4]

On September 26, 2003, ATI filed this suit against Andersen, alleging that Andersen committed malpractice when it certified ATI's financial statements—the same financials that were originally distorted by Gabayzadeh and Elghanayan—to ATI's detriment.

## II. LEGAL STANDARD

 Federal courts may only adjudicate actual cases or controversies. *See* U.S. Const. art. III, § 2. "Because standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir.1991). Thus, a challenge to a plaintiff's constitutional standing to sue amounts to an objection to the court's subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").[5]

 "It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 68, 108 S.Ct. 376, 98 L.Ed.2d 306

Bankruptcy Court entered a default judgment against him. *See* Entry of Default Against Mehdi Gabayzadeh, *American Tissue, Inc. v. Gabayzadeh (In re American Tissue Inc.)*, Adv. Proc. No. 02–4940 (Bankr.D.Del. Dec. 6, 2002), Ex. 9 to the Beaudreau Decl.

4. No explanation is provided for Elghanayan's omission as a defendant in either the criminal cases or the SEC civil enforcement

action against ATI. The Insider Complaint, however, clearly alleges Elghanayan's culpability for the misstatements.

5. Because the instant motion challenges the Court's subject matter jurisdiction, ATI's argument that the motion is untimely under Rule 12(g) is misguided. An objection to subject matter jurisdiction is *always* timely. *See* Fed.R.Civ.P. 12(h)(3).

(1987) (Scalia, J., concurring in part and concurring in the judgment) (citations omitted). *See also Robinson*, 269 F.3d at 140 ("the defendant may challenge either the legal or the factual sufficiency of the plaintiff's assertion of jurisdiction, or both."). Where a defendant objects to a plaintiff's jurisdictional *pleading*, the standard of review is the same as the familiar Rule 12(b)(6) requirement: "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000). "But where evidence relevant to the jurisdictional question is before the court, 'the district court ... may refer to [that] evidence.'" *Robinson*, 269 F.3d at 140 (alterations in original) (quoting *Makarova*, 201 F.3d at 113). Thus, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir.2002).

## III. DISCUSSION

 Under the Article III cases and controversies requirement, it is an ironclad rule that a party must "assert *his own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (emphasis added). Thus, "[i]t is well settled that a bankruptcy [debtor-in-possession] has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert

claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118.[6]

 In a bankruptcy proceeding, state law "determines whether a right to sue belongs to the debtor or to the individual creditors." *In re The Mediators, Inc.*, 105 F.3d 822, 825 (2d Cir.1997). In New York, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120. Thus, a debtor-in-possession lacks standing to sue third parties for defrauding the debtor if the debtor's principals had a hand in the misconduct. This maxim has become known as the *Wagoner* rule.

> The rationale underlying the *Wagoner* rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation. Because management's misconduct is imputed to the corporation, and because a [debtor-in-possession] stands in the shoes of the corporation, the *Wagoner* rule bars a [debtor-in-possession] from suing to recover for a wrong that he himself essentially took part in.

*Wight v. Bankamerica Corp.*, 219 F.3d 79, 86–87 (2d Cir.2000). It is therefore of no moment that the offending directors, among them Gabayzadeh and Elghanayan, have been deposed. The *Wagoner* rule makes clear that when a bankrupt corporation has been defrauded by its own principals, the corporation itself has no recourse. The claim belongs to the creditors.

---

**6.** *Wagoner* involved a bankruptcy trustee, not a debtor-in possession. But, in this context, what is true of the bankruptcy trustee is equally true of a debtor-in-possession. ATI admits as much in its papers. *See* Pl. Mem. at 9 ("ATI is a Chapter 11 debtor-in-possession, in a complete wind-down and liquidation mode, with new independent court appointed professionals overseeing 100% of ATI's affairs. The responsibilities and legal obligations of the professionals of this debtor-in-possession are the equivalent of a Trustee.").

Under the *Wagoner* rule, ATI has no standing to sue Andersen. ATI here accuses Andersen of dereliction with respect to the very financial statements that ATI's officers and directors manipulated.[7] ATI cannot now be heard to claim that it was duped into believing those financials were accurate simply because Andersen certified them. The only ones who were duped were ATI's creditors, particularly their bond-holders. It is the creditors, not ATI, who have a right to complain. That being so, ATI has no standing to sue.[8]

In the face of this controlling authority ATI argues that "the Federal bankruptcy scheme provides support for why ATI has

---

7. Although ATI brings claims for malpractice, breach of contract, and breach of fiduciary duty, these three causes of action boil down to one claim for the provision of deficient accounting services. *See, e.g., Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,* 212 B.R. 34, 39 (S.D.N.Y.1997) ("The Trustee's three causes of action—legal malpractice, breach of contract and breach of fiduciary duty—essentially amount to a single claim for the provision of deficient legal services."); *In re Wedtech Corp. (Wedtech Corp. v. KMG Main Hurdman),* 81 B.R. 240, 241 (S.D.N.Y. 1987) ("the allegations of the debtor here, although brought under many different theories, all sound in malpractice. We find that ... claims of ... malpractice, ... [and] breach of fiduciary duty ... allege what is essentially a single form of wrongdoing under different names.").

8. The opinion in *Wechsler* is particularly instructive. That case involved Tower Financial Corporation, which filed for bankruptcy after a well-publicized Ponzi scheme was uncovered. In *Wechsler,* Towers' bankruptcy trustee sued its former law firm for "legal malpractice in failing to stop the fraud personally overseen and directed by Towers' CEO Steven Hoffenberg and his cohorts...." 212 B.R. at 35. That case was dismissed under the *Wagoner* rule because the trustee had no standing to sue for misconduct that was perpetrated principally by the corporation's own directors.

The instant case is precisely analogous. ATI accuses Andersen of malpractice because it failed to stop the fraud perpetrated by ATI's directors and sole shareholders. The only difference between the two cases is that, in *Wechsler,* the complaint itself pled the officers' misconduct. Here, the instant Complaint admittedly makes no mention of Gabayzadeh and Elghanayan's role in the misstatements. But the accusations against them in the Insider Complaint match up item-for-item with the misstatements identified in the instant Complaint, *see supra* Part I.B, right down to footnotes in the Form 10-K. *Compare, e.g.,* Compl. ¶ 19(e) (referring to misstatements relating to insider loans contained in footnote 12 to ATI's Form 10-K) *with* Insider Compl. ¶ 56 (same). And notably, a default judgment was entered against Gabayzadeh in that case. Moreover, the Insider Complaint's account is corroborated by the subsequent criminal and enforcement actions brought against ATI's directors, including certain guilty pleas. *See supra* Part I.C. In light of the admissions made by ATI's directors in the Insider Complaint action and the criminal proceedings, and in light of ATI's own binding admissions in the Insider Complaint, *see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985) ("[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound...."); *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983) ("factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them.") (cited in *Bellefonte* ), there is ample evidence to show that Gabayzadeh and Elghanayan, among others, were responsible for the misstatements alleged in this case.

In short, ATI has submitted no argument, let alone evidence, that there was any misstatement in the financials not caused by its own directors. All of the "essential triggers of the [*Wagoner* ] rule are present: the dominant managers of the debtor company [ATI], including its only two shareholders, orchestrated and/or tolerated and endorsed a fraud on creditors and a [debtor-in-possession] has subsequently attempted to implicate third-party professionals in wrongs for which these dominant individuals are directly responsible. It follows that the [debter-in-possession] may not pursue such a claim on behalf of [ATI]." *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. 704, 709 (S.D.N.Y.2001).

standing to bring these claims." Pl. Mem. at 9. Its contention, boiled down to its essence, is that a bankruptcy trustee (and thus debtor-in-possession) is not quite the same as the pre-petition debtor because the trustee owes a duty to protect an "entire community of interests," including those of creditors. *Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

This argument misses the mark. It is true that a bankruptcy trustee has some obligations to the debtor's creditors. But it is equally true that the trustee is not empowered to sue *on their behalf. See Caplin v. Marine Midland Grace Tr. Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *Wagoner,* 944 F.2d at 118. None of the cases cited by ATI is to the contrary.[9]

That being so, ATI could have saved its case only by showing that (a) Andersen's alleged malpractice was unrelated to the misconduct charged in the Insider Complaint, or (b) that the insiders' misconduct is not fairly attributable to ATI. Having produced *no* such evidence, let alone a preponderance thereof, the *Wagoner* rule requires dismissal.

## IV. CONCLUSION

For the foregoing reasons, Andersen's motion is granted and the case is dismissed without prejudice. The Clerk is directed to close this motion and this case.

SO ORDERED:

---

**9.** Indeed, ATI offers one case as "particularly instructive," citing *In re County Seat Stores, Inc.,* 280 B.R. 319 (Bankr.S.D.N.Y.2002). But the "one issue" in *County Seat* was "whether the Chapter 11 Trustee is an entity separate and distinct from the Debtor for purposes of the 'insured versus insured' exclusion contained in Exclusion 4(i) of the Director and Officer Policy issued by the defendant." *Id.* at 321. *County Seat,* in other words, was addressed only to a question of contract interpretation; that decision does not purport to define generally the differences between a debtor and its trustee.